IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIUDMILA OVCHINNIKOVA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | Magistrate Judge |
| SERRALA US CORPORATION, SERRALA | ) | |
| GMBH, and SERRALA GROUP GMBH, | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Liudmila Ovchinnikova, by and through her attorneys, Pedersen & Weinstein LLP, for her Complaint against Defendants, Serrala US Corporation, Serrala GmbH, and Serrala Group GmbH, states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to challenge Defendants' unlawful discrimination against her based on her gender, national origin and ancestry, as well as the retaliation she suffered for opposing the unlawful conduct. Plaintiff asserts her claims under the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, ("Title VII") and 42 U.S.C. Section 1981 ("Section 1981"), as well as the Illinois Human Rights Act ("IHRA"). Plaintiff also brings claims for unpaid wages under the Illinois Wage Payment and Collection Act ("IWPCA").

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and principles of pendent and supplemental jurisdiction.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a).

1

## PARTIES

4. Liudmila Ovchinnikova ("Plaintiff") was formerly employed by Defendants as a senior account executive on the software sales team out of their office in Chicago, Illinois. Plaintiff began her employment in April 2016 and was unlawfully terminated on November 1, 2021.

5. Defendants Serrala US Corporation, Serrala GmbH and Serrala Group GmbH (collectively "Defendant" or "Serrala") are international providers of financial automation and global business to business payment services. Serrala's global headquarters are in Hamburg, Germany, but it also maintains U.S. headquarters in Chicago, Illinois. Serrala operates offices across North America, Europe, Asia and the Middle East and has over 700 employees worldwide.

6. At all times relevant to this Complaint, Defendant employed more than 15 employees and was engaged in an industry affecting commerce.

7. At all times relevant to this Complaint, all three Defendants – individually and jointly – were Plaintiff's employer and made decisions related to her employment, compensation and termination.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment With Defendant*

8. Plaintiff began her employment with Defendant in April 2016, bringing with her several years of international sales experience.

9. Plaintiff held various titles over the course of her tenure with Defendant, but always worked in a sales executive position and usually was the only woman on the sales team. Her most recent title was Senior Account Executive.

10. Throughout her employment, Plaintiff performed her job extremely well, discharged all duties assigned to her competently, and demonstrated a high quality of work and conscientious devotion to her job. To be sure, at the time of her termination, Plaintiff was the highest performing sales account executive on the software sales team, comprised of approximately ten others (all men of U.S. origin). Plaintiff was otherwise a dedicated employee who also stepped up to face the challenges presented by COVID-19 by working long hours for Defendant and traveling to meet with clients, prospects, and coworkers despite natural concerns for her health and safety.

11. Based on her talents and experience, Plaintiff had every reason to anticipate a long and rewarding career with Defendant.

***Defendant Discriminated Against Plaintiff***
***On Account Of Her Gender, National Origin And Ancestry***

12. Despite her exemplary job performance and years of service, Defendant subjected Plaintiff, who is from Russia, to discrimination on account of her gender, national origin and ancestry, and ultimately forced her out of the organization unlawfully.

13. More specifically, Plaintiff's employment situation changed dramatically in May 2021 when she began reporting to Jeff Butts ("Butts"), Defendant's new Vice President of Sales, North America. Before Butts, Plaintiff had reported to seven (7) different supervisors, all of whom valued her work and consistently gave her positive feedback and support.

14. Butts, however, made it clear from the beginning that he had a problem working with women, particularly a woman from Russia like Plaintiff. Indeed, during the first sales team meeting with Butts on May 26, 2021, Butts unabashedly told all the participants that "customers in states like Texas, Oklahoma, and Alabama will not take seriously a company introduction with a heavy foreign accent," or words to that effect. All of the states Butts mentioned by name were part

3

of Plaintiff's sales territory and she was the only salesperson who spoke with a foreign accent. Accordingly, it was obvious that Butts' derogatory comments were directed toward Plaintiff and only Plaintiff. Butts continued to state that "we all speak English here, but not the same kind of English, so we need to hire a U.S. based business development team with good English," or words to that effect. Plaintiff was stunned and distressed by Butts' discriminatory remarks.

15. Although Plaintiff tried to move past this incident and worked diligently as she always did, the situation only deteriorated from there, with Butts clearly treating Plaintiff – the only female salesperson on the team and the only one of foreign origin – differently than her male and American peers. Examples of Butts' unlawful conduct in this regard include, but are not limited to, the following:

    a.    Butts was openly hostile to Plaintiff and purposely demeaned her in front of her colleagues during a sales meeting at Defendant's headquarters in Chicago in August 2021. Specifically, Butts interrupted Plaintiff while she was giving a sales presentation and attacked her by saying "you don't know what you are doing" and "you are presenting nonsense" or words to that effect. Butts' behavior was so harsh that several coworkers asked Plaintiff afterwards if she was alright. Butts did not treat any of the male account executives in a similar manner.

    b.    Butts chastised Plaintiff over trivial and nonexistent transgressions. For example, after she had submitted her travel expenses to Butts for reimbursement following her trip to Chicago, he responded that she should not submit such expenses during work hours. Plaintiff is not aware of any policies dictating the specific hours that expenses should be submitted to management for reimbursement and in fact, sales representatives had just been chastised to submit their expenses promptly or risk not getting reimbursement at all. In light of all these circumstances, and the fact that Plaintiff was the highest performing salesperson on the software sales team at the time and had more client interactions than most of the men on her team, it was plain that Butts was simply looking for reasons to manufacture criticisms of her.

    c.    Butts actively interfered with Plaintiff's performance – while working to improve that of male account executives – by refusing to give her sales leads that should have been directed to her. More specifically, in October 2021, Butts inexplicably directed several sales leads to male sales executives, even

4

        though the accounts were in Plaintiff's territory and should have been assigned to her. Defendant now claims that these leads were denied to Plaintiff after she rejected another position with the company and knew her sales position was ending, but this claim is demonstrably false and a pretext for discrimination.

        d.    Butts tried to undermine Plaintiff with clients and prospective clients. For example, after Plaintiff had managed the sales and negotiations process with one of her customers before Butts even joined the company, Butts cut Plaintiff out of the final contract negotiations, indicating he wanted to handle the negotiations himself with the customer's procurement manager in regard to payment terms (which only Butts was authorized to decide) and did not want Plaintiff joining the calls. Butts subsequently – and disingenuously – chastised Plaintiff for not being involved in the negotiations. Butts' conduct in this regard was otherwise specious as he and Defendant knew that account executives like Plaintiff could not negotiate discounts on pricing and payment terms with customers without executive management's approval.

        e.    Butts ignored Plaintiff's routine requests for assistance and failed to provide her with managerial support that he routinely extended to male sales executives. He also unapologetically failed to appear for a scheduled meeting with one of Plaintiff's prospects, which sent the clear message that he did not value her or the work she was doing.

        f.    Butts otherwise denied Plaintiff opportunities to advance her career while extending such opportunities to lesser performing men. For example, Butts excluded Plaintiff from a conference in Washington, DC, an event she typically attended and which usually resulted in salespersons generating leads and sales, and instead invited several male account executives with lower sales than her to the conference.

16.    The cumulative effect of Butts' behavior was that Plaintiff was forced to work in a hostile environment.

17.    Butts' adverse actions against Plaintiff culminated in mid-October 2021 when he told her that he was going to "restructure" the sales team and that she no longer was suited for a sales role. Butts then told Plaintiff that her only two options were to accept a demotion where she would have little interaction with customers and her pay would be reduced significantly or leave the company.

5

18. Plaintiff was shocked as she knew she was performing at a top level and had never received any indication that her job was in jeopardy. Butts failed to provide Plaintiff with any explanation for his decision despite her requests for one, presumably because there was none. To be sure, Butts was well aware that Plaintiff was the top salesperson on the software sales team at the time and that she had been a successful salesperson since she joined the company. The claim that Plaintiff was not suited for a sales role simply defied credibility. Despite the disingenuous and incongruity of Butts' comments, Plaintiff told Butts she would think about these two options, which he later confirmed to her in writing.

19. Further demonstrating Butts' blatant dishonesty, Plaintiff attended Defendant's virtual global sales meeting a few days later during which the Chief Sales Officer spoke about Defendant's strategy of expanding the sales team and hiring more sales executives in the coming year, but was concerned about being able to do so given the competitive job market. As such, the Chief Sales Officer promised those in attendance (including Plaintiff) a bonus if they could refer a qualified candidate for hire. The irony of these comments was not lost on Plaintiff and it was obvious that Butts was simply trying to force her out because, as he had already openly acknowledged and made clear by then, he did not want a woman from Russia working for him.

***Plaintiff Opposed The Discrimination, But To No Avail***

20. As the events described above were unfolding, Defendant had no human resources director or manager in the United States and no effective mechanisms in place to prevent, address or remedy discrimination in the workplace. In September 2021, however, Defendant finally hired a human resources manager to replace the one who had left earlier in the year.

21. Accordingly, on October 14, 2021, following Plaintiff's conversation with Butts wherein he told her she would be demoted or fired, Plaintiff contacted Christine Friese ("Friese"),

6

the newly hired Director of Human Resources for North America, and Tristan Klotsch ("Klotsch"), the Global Vice President of Human Resources in Hamburg, Germany, to report what was happening to her. Plaintiff specifically advised Friese and Klotsch that Butts was trying to terminate her employment because of her gender and national origin and relayed to them several of the incidents set forth above.

22. Plaintiff had hoped Defendant would address the discrimination so she could continue working and excelling at the company, but to her dismay, Defendant took no remedial action whatsoever. Plaintiff followed up with Friese and Klotsch again on October 28, 2021 to inquire about the status of her complaint as she had not received any substantive response to her concerns, had not been contacted for an interview or asked any questions, and she was beginning to experience retaliation from her management.

***Defendant Retaliated Against Plaintiff And Unlawfully Fired Her***

23. As a result of Plaintiff reporting the gender and national origin discrimination described above, Defendant retaliated against her.

24. To be sure, in response to her inquiry on October 28, 2021 about the status of her discrimination complaint, Friese contacted Plaintiff to schedule a call for November 1, 2021. Plaintiff expected to discuss her complaint of discrimination with Friese and Klotsch on November 1, but instead – in retaliation for her reports of discrimination – they abruptly fired her, claiming she did not have the requisite "skill set" to continue working. In fact, Plaintiff was no longer even eligible for the demotion that had prompted her complaint to human resources in the first place.

25. Again, Plaintiff pressed for an explanation as to the skills she was missing and that lower performing male account executives allegedly had, as it was patently nonsensical to tell the

highest performing salesperson that she lacked the skills to sell. Once again, Defendant could not and would not provide a credible response.

26. Notably, in firing her, Defendant's human resource officers did not try to deny Butts' previous discriminatory remarks but instead farcically claimed that he simply meant customers wanted to speak to someone in their own time zone.

27. Given all the circumstances, including Plaintiff's stellar performance over the years, the obviously pretextual reason for her termination, Butts' explicit discriminatory comments and blatant mistreatment of Plaintiff compared to her American male peers, the fact that Defendant *promoted* a lower performing male account executive to Director of Sales for North America the day before it fired Plaintiff, and the timing of her termination on the heels of her complaints of unlawful discrimination, there is no question that Plaintiff was fired because she is a woman from Russia and in retaliation for her complaints of discrimination.

28. After Plaintiff retained counsel and advised Defendant that she was going to pursue her claims of discrimination and retaliation against them, Defendant offered a different explanation for firing Plaintiff. Defendant then claimed that Plaintiff merely "was separated as part of [a] restructuring and was one of three sales team members [the two others being men] separated at the same time." This claim has no merit. One of the men Defendant referred to held a different position than Plaintiff and sold a different product (and poorly at that, as he had only approximately $100,000 in sales at the time of his termination, as compared to Plaintiff who had over $1.6 million in sales). The other man was a relatively new hire who had sold *nothing* at the time of his termination. In other words, even if these men were part of a so-called restructuring, they plainly were selected because of their low job performance. Plaintiff, who had more sales than any man on her team, was selected for termination because of her gender and national

8

origin, and because she had reported discrimination.

29. After she retained counsel, Defendant also asserted as yet another explanation for firing Plaintiff that on October 14, 2021, Plaintiff rejected outright both options Butts presented to her so that is why she was fired. However, this claim – like others made by Defendant – is demonstrably false and obviously pretext for discrimination and retaliation.

30. With Plaintiff's termination, Defendant's salesforce in the United States was then comprised exclusively of men.

31. As further evidence of Defendant's unlawful conduct and attempt to cover it up, Defendant tried to obtain a release from Plaintiff of all of her claims in exchange for a nominal severance. It also refused to give Plaintiff a copy of her personnel file, in violation of the Illinois Personnel Records Review Act.

32. As further discrimination and retaliation, Defendant also "reminded" Plaintiff of the non-compete agreement she had previously been required to sign, knowing it would significantly impede her ability to find new employment.

***Defendant Violated The Illinois Wage Payment & Collection Act***

33. In addition to the foregoing, Defendant also refused to pay Plaintiff wages she earned and that it promised to pay her.

34. For example, Defendant failed to pay Plaintiff the annual salary she was promised throughout all of 2021 and instead paid her a substantially lower base salary.

35. For further example, Defendant denied Plaintiff commissions she earned on a sale she made to one of her accounts. Defendant instead forced Plaintiff to split the commissions with a male employee unjustly. Defendant also wrongfully lowered the commission rate Plaintiff had earned rate from 12% to 7%. Defendant took all these actions despite the fact that no commission

9

split agreement or rate reduction was discussed with Plaintiff before the sale and she had been pushed out of the final negotiations by Defendant. Plaintiff protested the unpaid wages to no avail.

36. As yet another example of Defendant's refusal to pay Plaintiff her earned wages, Defendant refused to pay Plaintiff commissions she earned on several sales she made before she was unlawfully fired.

*Defendant Failed To Exercise Reasonable
Care To Prevent And Correct Unlawful Conduct*

37. Defendant directed, encouraged, and participated in the above-described unlawful conduct. Further, Defendant failed to exercise reasonable care to prevent and correct promptly any harassment or discrimination. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

38. The discrimination described above was consistent with Defendant's standard operating procedure.

39. Defendant acted with malice or with reckless indifference to Plaintiff's federally and state protected rights.

*Plaintiff Timely Filed A Charge Of Discrimination*

40. Plaintiff timely filed charges of discrimination and retaliation against Defendant with the EEOC. Plaintiff subsequently requested and received her Notices of Right to Sue.

41. The EEOC cross-filed Plaintiff's charges of discrimination with the Illinois Department of Human Rights ("IDHR") pursuant to the work-sharing agreement between the EEOC and IDHR. After requesting and receiving her Notices of Right to Sue from the EEOC, Plaintiff submitted Notices of Opt Out of IDHR's Investigative and Administrative Process to the IDHR so she may pursue her state law claims in court. This Court has supplemental jurisdiction over Plaintiff's IHRA claims pursuant to 28 U.S.C § 1367(a).

*Plaintiff Suffered Damage*

42. As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

43. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

44. Plaintiff's career and reputation have been irreparably damaged as a result of Defendant's unlawful conduct.

45. Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, and she has incurred attorneys' fees and costs.

*Punitive Damages / Liquidated Damages*

46. Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages and/or liquidated damages.

## COUNT I

### SEX DISCRIMINATION IN VIOLATION OF TITLE VII

47. Plaintiff realleges paragraphs 1 through 46 and incorporates them by reference into Count I of this Complaint.

48. The Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991, ("Title VII") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

49. By the conduct as described herein, Defendant subjected Plaintiff to sex

discrimination in violation of Title VII.

## COUNT II

### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

50. Plaintiff realleges paragraphs 1 through 49 and incorporates them by reference into Count II of this Complaint.

51. The Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991, ("Title VII") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of national origin.

52. By the conduct as described herein, Defendant subjected Plaintiff to national origin discrimination in violation of Title VII.

## COUNT III

### RETALIATION IN VIOLATION OF TITLE VII

53. Plaintiff realleges paragraphs 1 through 52 and incorporates them by reference into Count III of this Complaint.

54. Title VII, specifically 42 U.S.C. Section 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

55. Defendant retaliated against Plaintiff for her complaints of discrimination. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII.

## COUNT IV

### DISCRIMINATION BASED ON DESCENT AND ANCESTRY IN VIOLATION OF SECTION 1981

56. Plaintiff realleges paragraphs 1 through 55 and incorporates them by reference into Count IV of this Complaint.

57. 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, ("Section 1981"), prohibits discrimination based on descent or ancestry in the performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. Section 1981 also prohibits harassment based on descent or ancestry.

58. By the conduct as alleged herein, Defendant subjected Plaintiff to discrimination based on her Russian descent and ancestry in violation of Section 1981.

## COUNT V

## RETALIATION IN VIOLATION OF SECTION 1981

59. Plaintiff realleges paragraphs 1 through 58 and incorporates them by reference into Count V of this Complaint.

60. Section 1981, specifically 42 U.S.C. Section 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

61. Defendant retaliated against Plaintiff for her complaints of discrimination. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of Section 1981.

## COUNT VI

## SEX DISCRIMINATION IN VIOLATION OF THE IHRA

62. Plaintiff realleges paragraphs 1 through 61 and incorporates them by reference into Count VI of this Complaint.

63. The IHRA makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of sex.

64. By the conduct as alleged herein, Defendant subjected Plaintiff to sex discrimination in violation of the IHRA.

## COUNT VII

### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE IHRA

65. Plaintiff realleges paragraphs 1 through 64 and incorporates them by reference into Count VII of this Complaint.

66. The IHRA makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of national origin.

67. By the conduct as alleged herein, Defendant subjected Plaintiff to national origin discrimination in violation of the IHRA.

## COUNT VIII

### RETALIATION IN VIOLATION OF IHRA

68. Plaintiff realleges paragraphs 1 through 67 and incorporates them by reference into Count VIII of this Complaint.

69. The IHRA, specifically 775 ILCS 5/6-101(A), makes it unlawful to retaliate against an employee who opposes what she reasonably and in good faith believes to be unlawful discrimination or because she has made a charge, filed a complaint, or participated in an investigation, proceeding, or hearing under the act.

70. Defendant retaliated against Plaintiff for her complaints of discrimination and retaliation. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the IHRA.

## COUNT IX

### VIOLATION OF IWPCA

71. Plaintiff realleges paragraphs 1 through 70 and incorporates them by reference into Count IX of this Complaint.

72. Plaintiff is an employee as defined by the IWPCA.

73. Defendant is an employer as defined by the IWPCA.

74. The IWPCA, 820 ILCS 115/2, defines "wages" to be "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation."

75. The IWPCA also defines "final compensation" to be "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties."

76. Pursuant to the IWPCA, 820 ILCS 115/3, "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1939, may be paid once a month." Additionally, under 820 ILCS 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

77. The IWPCA, 820 ILCS 115/5, further requires that employers pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case

later than the next regularly scheduled payday for such employee.

78. In violation of the IWPCA, Defendant failed to pay Plaintiff her "wages" and "final compensation."

79. By the conduct as alleged herein, Defendant knowingly and willfully violated the IWPCA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violate Title VII, Section 1981, the Illinois Human Rights Act, the anti-retaliation provisions of those laws, and the Illinois Wage Payment and Collection Act;

b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d. In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff prejudgment interest;

h. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

i. Award Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: October 21, 2022

                            Respectfully submitted,

                            By:

                                */s/Erika Pedersen*
                                Attorney No. 6230020

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
33 N. Dearborn Street
Suite 1170
Chicago, IL 60602
(312) 322-0710
(312) 322-0717 (facsimile)

17